UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KREG L. DAVIS and AURORA H. DAVIS, husband and wife,<br><br>      Plaintiffs,<br><br>v.<br><br>YRROW ON, LLC, a purported Idaho limited liability company; LANCE and AMBER BOYCE, husband and wife; and AINSLEY JARDINE, an individual,<br><br>      Defendants. | Case No. 4:23-cv-00301-DCN |
| YRROW ON, LLC, a Utah limited liability company, dba YRROW On, LLC,<br><br>      Counter plaintiff,<br><br>v.<br><br>KREG DAVIS, an individual,<br><br>      Counter defendant. | **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is an application by Plaintiffs Kreg and Aurora Davis for

Prejudgment Writ of Possession and/or Writ of Attachment (the "Application"). Dkt. 7.

MEMORANDUM DECISION AND ORDER - 1

Defendants Yrrow On, LLC, Lance and Amber Boyce, and Ainsley Jardine (together, the "Defendants") collectively oppose the Application. Dkt. 15.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the Application without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court DENIES the Davises' Application.

## II. BACKGROUND

### A. Factual Background

In the early months of 2022, Plaintiff Kreg Davis contacted his friend and neighbor, Defendant Lance Boyce, regarding the construction of a home for Kreg and his wife, Aurora, in Big Sky, Montana. Lance and Amber Boyce are owners and operators of a real estate development company called Yrrow On, LLC, and as such, had knowledge and contacts that could be useful to the Davises in the construction of a new home.[1] After some negotiation, the parties entered a "cost plus" agreement whereby the Davises agreed to pay the cost of all work done on the home, plus a twenty percent fee to Yrrow On in exchange for access to Yrrow On's assistance and network in the construction of the home.

The parameters of the parties' agreement are disputed—the Davises argue that Yrrow On acted as a general contractor for the project and that their working relationship

---

[1] The exact nature of Yrrow On, LLC's organization has been called into question by Plaintiffs. The Court does not find resolution of that question necessary to rule on the Davises' Application.

was governed by a written Construction Agreement, an unsigned copy of which was submitted by Plaintiffs with their Complaint. Dkt. 1-1. Defendants concede that the written Construction Agreement exists but contend that it was never accepted by both parties, and that instead, the parties' relationship was governed by a later, oral contract. Further, Defendants assert that Yrrow On was not functioning as a general contractor, but rather, played only a background, administrative role in the construction of the home. In deciding the Application, the Court need not precisely define the features of the parties' agreement. Instead, it finds simply that some form of contractual arrangement existed between the parties that required the Davises to pay for services provided by Yrrow On.

Construction of the home began in May of 2022. As construction progressed, Yrrow On regularly submitted invoices to the Davises, who paid them in a timely manner. However, upon later review of Yrrow On's invoices, the Davises had trouble reconciling some of Yrrow On's charges with the work being performed on the home. Kreg raised his concerns to the Boyces, but the parties were ultimately unable to come to an understanding. As a result of these concerns, the Davises terminated their relationship with Defendants in May 2023.

**B. Procedural Background**

In June 2023, the Davises filed suit against Yrrow On and against Lance, Amber, and Ainsley (Lance and Amber's daughter)[2] individually, alleging, among other things, fraud and breach of contract. Dkt. 3. Defendants denied the Davises' allegations and filed a counterclaim for breach of contract. Dkt. 8. Shortly after filing their complaint, the Davises filed the instant

---

[2] Plaintiffs assert that Ainsley works in the billing department of Yrrow On. Dkt. 7-1, at 2. Defendants dispute this. Dkt. 15, at 13.

Application, requesting a writ of possession and/or a writ of attachment on Defendants' personal bank accounts and various pieces of real property owned by Defendants.

### III. LEGAL STANDARD

It is well established that plaintiffs in federal court may employ remedies from the law of the state in which the federal court sits to secure satisfaction of a potential judgment. Fed. R. Civ. P. 64; *see, e.g.*, *Reebok Int'l, Ltd. V. Marnatech Enters., Inc.*, 970 F.2d 552, 558 (9th Cir. 1992). Accordingly, the Court's analysis relies on Idaho's statutory scheme governing writs of possession and attachment.

#### A. Writ of Possession

Under Idaho law, a plaintiff in an action to recover possession of personal property may request delivery of the property before trial begins on a provisional basis, under certain circumstances. Idaho Code § 8-301. For such a request to be successful, a plaintiff must: (1) show he or she is the owner of the property or is otherwise entitled to possession (through a written instrument if possible), (2) show the property is being wrongfully detained by the defendant, (3) provide a description of the property, including its current location, and (4) show that the property has not been taken for a tax, assessment, or fine, pursuant to statute. Idaho Code § 8-302(1)(a–d). If a reviewing court is satisfied that a plaintiff has complied with the foregoing requirements, it will issue an order instructing the defendant to show cause as to why the property should *not* be delivered to the plaintiff and will schedule a hearing on the issue. Idaho Code § 8-302(2).

#### B. Writ of Attachment

Chapter 5 of Title 8 outlines how a plaintiff might attach an interest in a defendant's

property to ensure that a judgment rendered by the court may ultimately be recovered. Idaho Code § 8-501 *et. seq*. Under Section 8-502, a plaintiff requesting the issuance of a writ of attachment must show: (1) the defendant is indebted to the plaintiff under a judgment or contract, (2) payment under the contract is not otherwise secured, and (3) the attachment is not sought in an effort to interfere with efforts by any of defendant's creditors.[3] Like Section 8-302, if the reviewing court is satisfied that the foregoing requirements are met, it will issue an order instructing the defendant to show cause as to why a writ of attachment should *not* be issued and will schedule a hearing on the issue.

## IV. ANALYSIS

### A. Writ of Possession

The Court begins with an analysis of the Davises' application for a writ of possession. The Davises assert they were overcharged $672,919.17 from their first invoice payment to the termination of their working relationship with Defendants. *See, e.g.*, Dkt. 7-2. In support of their claim, the Davises introduce copies of several invoices provided to them by Defendants. Dkts. 7-3–7-13. The Davises highlight what they perceive to be fraudulent, after-the-fact additions to the invoices made by Defendants and claim that the additions resulted in ill-gotten gains. Dkt. 7. The Davises request that such gains be returned to them pending the outcome of this litigation. *Id.* They also request a writ of possession regarding some of Defendants' recently completed housing projects, which they allege were constructed using construction materials paid for by the Davises

---

[3] If a defendant is a non-resident of Idaho, then a plaintiff need only show that the defendant is indebted to the plaintiff and that the defendant is a non-resident. Idaho Code § 8-502(a)(2).

and using funds inappropriately received from the Davises. Dkt. 7-1, at 15.

Defendants do not deny making after-the-fact adjustments to the invoices in question. Dkt. 15. Rather, they assert their additions were generally to account for the room, board, and travel expenses of subcontractors working on the home—expenses they allege the Davises agreed to pay. *Id.* Other discrepancies are attributed to simple misunderstandings between the parties or to unsophisticated subcontractor accounting practices. Defendants argue further that they actually *underbilled* the Davises in several instances and that the Davises still owe Yrrow On significant monetary sums. *E.g.* Dkt. 15, at 21, 25–26.

Under Section 8-302(1–2), a reviewing Court must determine whether it is satisfied that Plaintiffs have met the requirements of subsection (1). The Court is not.

As an initial matter, the parties dispute whether a writ of possession may be granted with regards to funds in a bank account, as Plaintiffs request. Defendants assert that a writ of possession may be granted only in relation to identifiable property—like a car or a "bag of gold." Dkt. 15, at 14–15. Funds in an account, on the other hand, are fungible and unidentifiable. *Id.* Plaintiffs counter that such a limiting interpretation is inconsistent with the statutory language of Section 8-302. Dkt. 20, at 3–5.

Caselaw interpreting Section 8-302 is scarce. Further, in the only instance where the statute was invoked to secure possession of money, and not a more conventional item of personal property, the controversy was resolved on other grounds. *Stanger v. Walker Land & Cattle, LLC,* 498 P.3d 1195, 1204 (Idaho 2021). However, the Court finds that even accepting Plaintiffs' assertion that funds can be the subject of a writ of possession, such a

remedy is inappropriate here.

Beginning with the first two points of Section 8-302(1), the Plaintiffs present a plausible argument that they have been defrauded out of property they rightfully own (their money and materials) and that Defendants are wrongfully detaining that property. However, Defendants present an equally plausible argument that the accounting discrepancies at the heart of this case were simply a result of ambiguous contracting. While it is not immediately clear whether the written Construction Agreement or a later oral agreement governs the parties' relationship, neither proposed contract includes any type of fee schedule, nor is there one that address with clarity the allocation of subcontractor living expenses.

Further, Defendants credibly allege that the only materials they incorporated into other projects were incorporated with the permission of the Davises and in exchange for a credit on the Davises' final bill. Thus, without strong supporting caselaw, clear contractual evidence, or really anything other than the Davises' assertions of foul play to support their position, the Court cannot conclude that the disputed funds and materials are the rightful property of the Davises. Nor can it conclude that the funds and materials are being wrongfully detained by Defendants. The Court, therefore, declines to issue a writ of possession.

### B. Writ of Attachment

The pivotal question for the Court's analysis here is whether the Davises have shown that Defendants owe them a debt based upon a contract for the direct payment of money. The Court finds that the Davises have not made such a showing.

In instances where courts have relied on Section 8-502 to grant a writ of attachment,

MEMORANDUM DECISION AND ORDER - 7

the existence of an underlying debt has generally been undisputed, and the amount of the debt has been easily identifiable. *See, e.g.*, *Powell v. Crypto Traders Mgmt., LLC*, 2021 WL 397386 (D. Idaho Feb. 4, 2021); *Eta Compute, Inc. v. Semones*, 2019 WL 267702 (D. Idaho Jan. 18, 2019). For example, in *Powell*, a contract between investors and a cryptocurrency fund manager explicitly allowed investors an unlimited right to withdraw their funds. 2021 WL 397386, at *2. Thus, when the fund manager refused to honor investor withdrawal requests, the court issued a writ of attachment on the fund manager's assets in an amount equal to the investors' investments. *Id.* In *Semones*, the defendant admitted to stealing $3,000,000 from the plaintiff and subsequently returning only $1,500,000. 2019 WL 267702, at *1. Accordingly, the court issued a writ of attachment on the defendant's bank account pending a return of the rest of the stolen money. *Id.* at 4–5.

Here, the debt that the Davises claim they are owed is not undisputed. On the contrary, as discussed above, Defendants have asserted a plausible version of events in which they owe no debts to Plaintiffs and are, in fact, owed a substantial sum. There is no clear governing contractual provision like there was in *Powell* and there has been no admission of fault like there was in *Semones*. Instead, the Court is asked to weigh the Davises' word against Defendants' word. In such circumstances, the Court cannot conclude that Defendants are clearly indebted to the Davises. Accordingly, no writ of attachment will be issued.

### C. Temporary Restraining Order

In passing, the Davises request that if their requested relief is not awarded, the Court issue a temporary restraining order (a "TRO") on the disposition of Defendants' property

MEMORANDUM DECISION AND ORDER - 8

pursuant to Section 8-502(d). Dkt. 7, at 4; Dkt. 20, at 7. Plaintiffs seeking a TRO must show, among other things, that they are likely to suffer irreparable harm without preliminary relief. *E.g.*, *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The Davises have made no such showing here. Additionally, there is no indication Defendants could not pay damages—if any are awarded—in the absence of a TRO. Said another way, there is no reason to encumber Defendants' property without a showing that it is that property, and only that property, that would be used to satisfy a hypothetical judgment. The Court, therefore, declines to issue a TRO.

## V. CONCLUSION

The Court makes no determination today regarding the propriety of either party's conduct in construction of the Davis home or either party's likelihood of success on the merits. It simply finds that the Davises have not yet shown they are entitled to the disputed funds, nor have they shown that Defendants are indebted to them. The Court, therefore, DENIES the Davises' Application for Prejudgment Writ of Possession and/or Writ of Attachment.

## VI. ORDER

The Court HEREBY ORDERS:

1. The Davises' Application for Prejudgment Writ of Possession and/or Writ of Attachment (Dkt. 7) is DENIED.

2. The Court will send out its standard Litigation Order shortly so this case can move

MEMORANDUM DECISION AND ORDER - 9

forward into discovery.

DATED: October 13, 2023

David C. Nye
Chief U.S. District Court Judge